IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GEORGE R. DOWLER, #283-884,<br>　　　　Plaintiff, | * |
| | * |
| v. | CIVIL ACTION NO. RWT-05-2690 |
| | * |
| DAVID BLUMBERG, et al.,<br>　　　　Defendants. | * |

******

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL HOLLENBAUGH, #315-550,<br>　　　　Plaintiff, | * |
| | * |
| v. | CIVIL ACTION NO. RWT-05-2692 |
| | * |
| DAVID BLUMBERG, et al.,<br>　　　　Defendants. | * |

******

## MEMORANDUM OPINION

The above-captioned cases were filed by Maryland state prisoners challenging the constitutionality of state statutes implemented by the Maryland Parole Commission regarding the revocation of certain "good time" credits. Given the identical subject matter and issues, the cases were consolidated. Paper No. 9. Defendants have filed Motions to Dismiss, or in the Alternative for Summary Judgment, Paper Nos. 17 and 18, which will be treated as Motions to Dismiss. Plaintiffs have filed oppositions to the dispositive motion. Paper Nos. 23 and 25. No hearing is needed to resolve the issues raised in the Complaint. See Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' Motion is GRANTED.

### I. BACKGROUND

Plaintiffs allege that the decision of the Maryland Parole Commission ("MPC") to revoke

their mandatory release[1] erroneously included a decision to revoke previously earned diminution of confinement credits. Plaintiffs also challenge the statutory prohibition against their earning new diminution credits on the term of confinement for which they were mandatorily released, following subsequent revocation of their mandatory release.

Md. Code Ann., Corr. Serv. § 7-504 provides in pertinent part:

(b)(1) The commissioner presiding at an individual's mandatory supervision revocation hearing may revoke any or all of the diminution credits previously earned by the individual on the individual's term of confinement....

(c) After an inmate's mandatory supervision has been revoked, the inmate may not be awarded any new diminution credits on the term of confinement for which the inmate was on mandatory supervision.

**A.     George Dowler**

On April 14, 2004, Plaintiff Dowler was released on mandatory supervision. Paper No. 1, Dowler v. Saar, Civil Action No. RWT-05-2960 (D. Md. 2005). On June 21, 2003, he was arrested for car-jacking in Baltimore County. He was found guilty of car-jacking and sentenced to a four year term of imprisonment on September 16, 2004. Id. On October 22, 2004, the Maryland Parole Commission ("MPC") revoked Plaintiff's release and all 1,317 diminution of confinement credits. Id. Plaintiff appealed and the Circuit Court for Anne Arundel County remanded the case for a new revocation hearing. A second revocation hearing was conducted on September 19, 2005. Id. The MPC again revoked Plaintiff's mandatory supervision release and revoked a total of 955 diminution

---

[1]Under Maryland law, mandatory supervision or release is triggered when a sentence is reduced by all diminution of confinement credits earned by a prisoner. See Md. Code Ann., Corr. Serv. § 7-101(g). The "credits" or days earned are subtracted from the maximum expiration date of a term of confinement; the prisoner is released early and must remain on parole supervision until the maximum expiration date of the sentence. Mandatory release differs from parole only in that there is no eligibility hearing required before mandatory release occurs.

of confinement credits, including 189 industrial credits and 196 special project credits, pursuant to Md. Code Ann., Corr. Serv § 7-504.

**B.      Michael Hollenbaugh**

Plaintiff Hollenbaugh simply alleges that on September 1, 2005, the MPC revoked 260 of his diminution credits, including industrial, educational and good conduct credits.[2]  Paper No. 1, Hollenbaugh v. Saar, Civil Action No. RWT-05-2690 (D. Md. 2006).

## II. STANDARD OF REVIEW

**A.      Motion to Dismiss**

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U. S. 69, 73 (1989) *(citing* Conley v. Gibson, 355 U. S. 41, 45-46 (1957)).  "While §1983 complaints that recite bare legal conclusions that are 'wholly devoid of facts' or that are not supported by specific facts pleaded, may warrant dismissal, conclusory legal assertions that are supported by the pleaded facts - even if the factual assertions are equally consistent with a contrary conclusion - should survive a Rule 12(b)(6) motion to dismiss." Revene v. Charles County Commissioners, 882 F.2d 870, 873 (4th Cir. 1989) (citations omitted).  "In considering a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiffs, and its allegations taken as true." Finlator v. Powers, 902 F.2d 1158, 1160 (4th Cir. 1990) *(citing* Jenkins v. McKeithen, 395 U. S. 411 (1969)).

---

[2]Defendants did not see fit to provide this Court any additional information regarding Plaintiff Hollenbaugh's sentence, mandatory release, and/or the revoking of his mandatory release.  Rather, at to both Plaintiffs, Defendants chose to simply rely on the factual recitations contained in Plaintiffs' Complaints. Paper No. 18.

### III.  ANALYSIS

**A.     Due Process**

In order to be entitled to the protections of the Due Process Clause, a person must have a constitutionally protected life, liberty or property interest at stake.  By virtue of a valid criminal conviction and his subsequent legal confinement, a prisoner loses his expectation of liberty.  See Meachum v. Fano, 427 U.S. 215, 224 (1976).  In the prison context there are two different types of constitutionally protected liberty interests which may be created by state action.  The first is created when there is a state-created entitlement to an early release from incarceration. See Board of Pardons v. Allen, 482 U.S. 369, 381 (1987) (state created liberty interest in parole); Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (state created liberty interest in good conduct credits).  The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U. S. 472, 484 (1995). Lack of opportunity to earn or have applied diminution credits is not an atypical and significant hardship. See Bulger v. United Sates Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995). To the extent that mandatory supervision is release as if on parole, the Constitution itself does not create a protected liberty interest in the expectation of parole. See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); see also Jago v. Van Curen, 454 U.S. 14, 18 (1981) (mutually explicit understanding that inmate would be paroled does not create liberty interest).  "It is therefore axiomatic that because . . . prisoners have no protected liberty interest in parole they cannot mount a challenge against a state parole review procedure on procedural (or substantive) Due Process grounds."  Johnson v. Rodriguez, 110 F.3d 299, 308 (5th Cir. 1997).

The Supreme Court recognized that a liberty interest exists in the context of parole

revocation in <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972). At a revocation hearing, a parolee is entitled to: written notice of claimed violations of parole; disclosure of evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; the right to confront and cross-examine adverse witnesses; the right to have a neutral and detached hearing body consider revocation; and a written statement by fact-finders as to evidence relied on and the reasons for revoking parole. <u>Id</u>. at 489. Although minimum procedural rights were delineated, the Supreme Court recognized that a parole revocation hearing should remain informal to permit receipt of evidence not ordinarily admissible in a criminal trial. <u>Id</u>. at 489. In addition, the revocation hearing must be "structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." <u>Id</u>. at 484.

In accordance with <u>Morrissey</u>, Md. Code Ann., Corr. Serv. § 7-401 and Code of Maryland Regulations 12.08.01.22 provide that the parole revocation hearing be recorded and conducted by a commissioner who, after hearing all of the evidence, decides whether to revoke or continue parole. The commissioner may, in his discretion, award credit for the time the parolee spent out of custody. The parolee is entitled to an attorney and is provided written notice of the claimed violations. Plaintiffs do not contend that the conduct of their revocation hearings violated their rights to due process. Paper Nos. 1.

**B.    Ex Post Facto/Bill of Attainder**

Plaintiffs maintain that Md. Code Ann., Corr. Serv. § 7-504 is a bill of attainder proscribed by Art. I, § 10, of the Constitution.[3] A bill of attainder is a legislative act that inflicts punishment

---

[3] Article I, s 9, applicable to Congress, provides that "(n)o Bill of Attainder or ex post facto Law shall be passed," and Art. 1, s 10, applicable to the States, provides that "(n)o State

without a judicial trial upon individuals who are designated either by name or in terms of past conduct. The distinguishing feature of a bill of attainder is the substitution of a legislative for a judicial determination of guilt. See United States v. Lovett, 328 U.S. 303, 315-16 (1946). Clearly, Md. Code Ann., Corr. Serv. § 7-504 embodies no further implications of Plaintiffs' guilt than are contained in their original convictions; thus it manifestly is not a bill of attainder. "The question in each case where unpleasant consequences are brought to bear upon an individual for prior conduct, is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation." See De Veau v. Braisted, 363 U.S. 144, 160 (1960). Imputing consequences to inmates released before the expiration of their term of imprisonment is a proper restriction and regulation of present conduct rather than a punishment for past activity and as such is not a bill of attainder. Plaintiffs have failed to allege any facts which could establish they are subject to a bill of attainder. See United States v. O'Brien, 391 U.S. 367, 383 n. 30 (1968) ( "This Court's decisions have defined a bill of attainder as a legislative Act which inflicts punishment on named individuals or members of an easily ascertainable group without judicial trial").

Article I, § 10 of the Constitution likewise prohibits the States from passing any "ex post facto law." The ex post facto clause is aimed at laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990). The Division of Correction's computation of Plaintiffs' sentences remains, as was intended by the sentencing court. Plaintiffs will not be imprisoned beyond the term imposed by the sentencing court. See Weaver v. Graham, 450 U.S. 24, 30 (1981) (stating that an ex post facto violation occurs

---

shall . . . pass any Bill of Attainder, ex post facto Law . . ..''

when the legislature "increases punishment beyond what was prescribed when the crime was consummated."). Defendants have neither altered the definition of Plaintiffs' criminal conduct nor increased the punishment for their crimes. See Frost v. State, 647 A.2d 106, 113-15 (1994) (explicitly rejecting an ex post facto challenge to Md. Code Ann., Corr. Serv. § 7-504).

**C.     Habeas Corpus**

To the extent Plaintiffs' complaints can be construed as petitions for writs of habeas corpus, each is subject to dismissal. Sentence and diminution credit calculation issues generally are issues of state law and do not give rise to a federal question. See McCray v. Rosenblatt, 1994 WL 320212 (4th Cir. July 6, 1994) (per curiam) (unpublished); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Pringle v. Beto, 424 F.2d 515, 516 (5th Cir. 1970). Violation of a state law which does not infringe upon a specific constitutional right is cognizable in federal habeas corpus proceedings only if it amounts to a "fundamental defect which inherently results in a complete miscarriage of justice". Hailey v. Dorsey, 580 F.2d 112, 115 (4th Cir. 1978) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). A dispute over diminution credits does not rise to this level. See Willeford v. Estelle, 538 F.2d 1194, 1197 (5th Cir. 1976). If a "claim . . . rests solely upon an interpretation of [state] case law and statutes, it is simply not cognizable on federal habeas review." Wright v. Angelone, 151 F. 3d 151, 157 (4th Cir. 1998); see also Smith v. Moore, 137 F.3d 808, 822 (4th Cir. 1998) (refusing to entertain claim that jury instruction misstated South Carolina law).

The Court notes that Plaintiffs are not without a remedy to address the issues raised. A review of their claims regarding the diminution of confinement credits is available in the state courts pursuant to Maryland Rule 15-301 *et seq.,* provided that application of the credits to their current term of confinement would entitle either Plaintiff to an immediate release. Md. Rule 15-302(a)(1);

see also Maryland House of Correction v. Fields, 113 Md. App. 136, 140, 686 A. 2d 1103, 1105 (1996) (habeas relief is appropriate where prisoner alleged that prison officials' actions were unauthorized, and that he was unlawfully detained and was entitled to immediate release).

## IV CONCLUSION

For the above discussed reasons, the revocation of Plaintiffs' diminution credits as well as their inability to earn additional diminution credits on their original term of imprisonment does not violated their constitutional rights.  Accordingly, Defendants' Motion to Dismiss shall be granted. A separate order follows.

Date: 5/31/06

/s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE